# WHEELING.

## TOMPKINS v. THE KANAWHA BOARD.

Submitted January 23, 1880.  Decided December 17, 1881.

*(PATTON, JUDGE, Absent.)

Although the State of West Virginia owns the property under the control and supervision of the Kanawha Board, yet said Kanawha Board is liable to a suit for damages occasioned by its negligence in failing to discharge its duties; and such suit is not against the State within the meaning of section 35 of Article V of the Constitution, which declares: "The State of West Virginia shall never be made defendant in any court of law or equity."

Motion to dismiss a writ of error and *supersedeas* which had been allowed by this Court in an action on the case pending in the circuit court of the county of Kanawha, wherein William H. Tompkins was plaintiff, and the Kanawha Board was defendant, allowed upon the petition of said Board.  The motion was made by the said Tompkins.

The facts of the case are stated in the opinion of the Court.

*S. A. Miller* for the motion cited the following authorities: Acts of Va. 1829 pp. 50, 52; Session Acts of Va. 1832-3 p.

*Cause submitted before JUDGE P. took his seat on the bench.

73; Session Acts of Va. 1857–8 p. 93; Acts of Va. 1862 p. 53; *Id.* p. 64; *Id.* p. 151; Acts of W. Va. 1869 p. 75; 10 Leigh 452; 6 Gratt. 160; 13 Gratt. 541; Acts of Va. 1859–60 p. 115; Acts of Va. 1862 p. 56.

*C. Hedrick* against the motion cited the following authorities : 10 Leigh 454; 6 Gratt. 160; 13 Gratt. 549.

*William A. Quarrier* against the motion :

1. This case having been properly dismissed at the Rules, it is error in the circuit court to reinstate it and set aside the dismission after the 15th day of the term that next succeeded the dismission. Code, section 7, section 60, section 46 of chapter 125 ; *Enders* v. *Birch,* 15 Gratt. 64.

2. The Kanawha Board is a peculiarly West Virginia creation. It inherits none of the duties or liabilities of the old James River and Kanawha Company. Its powers, duties and liabilities are only those prescribed in the Acts of its organization. Acts of W. Va. 1869 p. 75.

3. The Kanawha Board is a branch or department of the State government. It cannot be sued by an individual in the State courts at all, and particularly not in an action *ex delicto* to recover remote and consequential demages. *Sayre* v. *Northwestern Turnpike Co.,* 10 Leigh 454; *Dunnington* v. *Same,* 6 Gratt. 160.

4. The court erred in refusing defendant's instructions as asked, and in amending them, and giving the instructions asked by the plaintiff.

5. The court erred in rejecting evidence of the institution of the suit of the *Plaintiff* v. *Steamer Lookout.*

JOHNSON, PRESIDENT, announced the opinion of the Court:

W. H. Tompkins brought an action on the case against the Kanawha Board for an injury to his property occasioned, as he alleges in his declaration, by the negligence of the defendant. After alleging in his declaration the incorporation of the defendant and its duties, and that under its charter it was required to keep the channel of the Kanawha river at the place, where the injury occurred, free from obstructions, and

the damage suffered by him &c., proceeds : "And the plaintiff avers, that said barge and said one thousand five hundred barrels of salt were lost by the negligence of the defendant in this, to wit: that it negligently and carelessly permitted the said chute to be so obstructed by logs driftwood, &c., &c., concealed from ordinary observation of navigators and especially those navigating the said steamer Look Out and barges aforesaid, as to cause the said barge aforesaid with its cargo aforesaid to be wholly lost and destroyed to the great injury and loss of the plaintiff.   Therefore the plaintiff sues, &c."

The suit was brought in the circuit court of Kanawha county in March, 1879.   On the 4th day of June, 1879, the defendant demurred to the declaration, which demurrer was overruled, and the defendant pleaded "not guilty."   The case was tried before a jury on the 17th day of June, 1879, and the jury found for the plaintiff and assessed his damages, at $1,987.59.   The court refused upon motion to set aside the verdict and entered judgment thereon.   On the 10th day of July, 1879, a petition was presented to one of the judges of this Court, praying a writ of error and *supersedeas* to said judgment and averring, that inasmuch as your petitioner is representing and acting for the State and has no personal interest in this controversy, it prays, that such *supersedeas* be allowed without security.   The question being a novel one, the judge granted the writ of error and *supersedeas* without bond.   Thereupon the plaintiff below, defendant in error, gave notice of a motion to dismiss the writ of error and *supersedeas*, if a supersedeas-bond was not given.   The motion was made and resisted, on the ground that no action lies against the Kanawha Board, that it cannot be sued, as suing it is in effect suing the State of West Virginia, and the board representing the State could not be required to give a bond before being heard in this Court.   That motion we must first consider.   Will such an action as this lie against the said defendant?   And if it will, should a supersedeas-bond be required, before this Court will review the judgment of the circuit court?   The act of the Legislature of West Virginia entitled "An act to enlarge the power and define the duties of the Kanawha Board and to authorize them to prosecute the improvement of the Kanawha river," provides in section 1 of

said act, that the "Board of Public Works shall annually appoint five directors for the Kanawha Board with power to sue and be sued as a body politic and corporate, who shall have control and supervision of the Kanawha river according to the provisions of the act providing more effectual means for the improvment of the Kanawa river, passed February 15, 1858, and an act to amend the charter of the James River and Kanawha Company, passed March 23, 1860, so far as the same may be consistent with the provisions of this act. The said board of directors shall hold their offices for one year and until their successors are appointed, and shall have all the powers pertaining to the said board as fully, as if they had been appointed according to the provisions of said act passed February 15, 1858," &c. For a history of the various acts of the State of Virginia and their powers in reference to the James River Company and the James River and Kanawha Company, see Judge Lee's opinion in *James River and Kanawha Co.* v. *Early*, 13 Gratt. 541, and Judge Green's opinion in *Swann, adm'r* v. *Summers, supra.* Only three cases bearing upon this question have been decided in the Court of Appeals of Virginia, to which we will refer.

In *Sayre* v. *Northwestern Road*, 10 Leigh 454, the action was against the company for "so negligently, defectively and unskilfully planning and constructing a bridge across Middle Island creek, that it was washed away and destroyed the grist-mill of the plaintiff." The court by Tucker, President, said : " The court not deciding the other questions argued in this cause at the bar are unanimously of the opinion, that the action does not lie in this case against The Northwestern Turnpike Company, composed as it is exclusively of officers of the government having no personal interest in it or in its concerns, and only acting as the organ of the commonwealth in effecting a great public improvement."

In *Dunnington* v. *Same Co.*, 6 Gratt. 160, the action was *assumpsit* for work and labor and material furnished for the corporation. The defendants demurred, and the demurrer was sustained, and judgment was rendered for the defendants, to which judgment the plaintiffs obtained a *supersedeas.* Allen, judge, in delivering the opinion of the whole court said: " It appears from the act of incorporation, that the

officers of the company are mere trustees for the common-wealth, and the road was to be constructed entirely at the public expense.   It is not pretended, that an individual can maintain an action against the State, unless she consents to submit herself to the jurisdiction of the courts, but this exemption the State may waive and in fact has done so by authorizing individuals to proceed against her in certain designated courts for claims against her.   When for her own convenience and to effect some specific object she creates an agency under a corporate name and invests it with corporate powers, she may also subject it to responsibilities of ordinary corporations.   *   *   It was forseen, that individuals might be aggrieved, as soon as the company commenced operations, by the location of the road and the erection of bridges, buildings and other works necessary for the construction and preservation of the road; and provision was made by the 5th section, authorizing the party aggrieved to institute proceedings in the county or superior court, where the land was situated, against the company to recover his damages.   The existence of the company did not cease on the completion of the road; it is charged with the duty of preserving it, and to do so must employ labor, procure materials, and of course enter into contracts to effect these objects.   Should controversies grow out of these proceedings, and individuals be aggrieved, considerations of justice as well as of convenience required, that a remedy should be afforded.   This it seems to me has been done in the act of incorporation by investing the company not only with power to sue, but also with the capacity to be sued.   The question really is not whether an action will lie against this company, but whether having regard to the objects of the incorporation the action will lie for the particular grievance complained of.

"It was not decided in the case of *Sayre* v. *The N. W. Turnpike Road*, 10 Leigh 454, that no action will lie against the corporation; all that the case decided was, that the action will not lie against this company for the injury there complained of.   The suit was brought to recover damages for a remote and consequential injury to the property of the plaintiff.   The declaration averred, that owing to the defective construction of a bridge by the company it fell, and was carried by the

stream against the mill and dam of the plaintiff, whereby they were destroyed. The reasons that governed the court in holding, that an action for such an injury could not be maintained against this company, are not given. The case was probably considered as falling under the influence of the cases of the *Governor & Co. of the British Cast Plate Manufacturers* v. *Meredith*, 4 T. R. 794; *Boulton* v. *Crowther*, 9 Eng. C. L. R. 227; and *Lansing* v. *Smith*, 8 Cow. 146, in which it was held that commissioners or trustees, acting under the authority of law to effect a public improvement for public purposes, in which they have no direct private interest, and who do not exceed their jurisdiction, are not liable to an action for a consequential injury resulting from an act, which they are authorized to do. The present case is not of that character, it is founded upon contract such as the company was necessarily authorized to make for the purpose of pursuing the work committed to its charge, and there is nothing in the words or spirit of the law which exempts the company from such an action."

In the case of *James River and Kanawha Company* v. *Early*, 13 Gratt. 541, the action was for an injury done to the plaintiff's boat and cargo by the negligence of the company in leaving a snag in the river. At page 555 Judge Lee, who delivered the opinion of the whole court, said: "It is said the James River Company was but the agent of the commonwealth, administering public funds and holding only in trust for the commonwealth, and thus as being in effect the commonwealth itself for the purposes of the acts was not liable to any such action. But I cannot assent to this reasoning. Even if it be conceded, that the James River Company was not liable to an action upon the principle of the decision in *Sayre* v. *The Northwestern Turnpike*, it by no means follows, that the present company would be entitled to the same exemption. The reason of that case cannot apply to this. The exemption from liability to be sued is a privilege peculiar and personal (so to speak) to the commonwealth and does not extend to her assignee, any more than would her privilege not to be sued for land claimed by her extend to her grantee of the land. The transfer of the privileges and immunities of the James River Company was not intended to place the James River and Kanawha Company above the law, and to

leave individuals, who might be specially injured by the neg-
lect of its corporate duties, without remedy or redress.    It
would be grievously unjust, that such a corporation should be
clothed with a privilege of this character only properly per-
taining to the sovereign authority of the State, and there is no
sufficient reason for supposing, that the Legislature ever in-
tended to confer it upon this company."

On page 551 of this report Judge Lee says: "The right
to demand the tolls and the liability for the neglect of the
duty, upon the performance of which the tolls were authorized,
are reciprocal and correlative.  The tolls are the remuneration
to the company for its expenditures on its works and the
consideration and the basis for any legal liability, that may be
cast upon it for any omission or neglect of duty in respect of
the new works, with which it was charged."

It is held in this case, that an action would lie against the
James River and Kanawha Company for negligence, the result
of which was an injury to the plaintiff's property.  The State
of Virginia owned a large amount of the stock of said com-
pany.  The rights and franchises of that company were by the
act of the West Virginia Legislature of March 3, 1869, trans-
ferred to the State of West Virginia and then conferred up-
on the Kanawha Board.  Suppose, the State of Virginia had
owned *nine tenths* of the stock of the James River and Kana-
wha Company, would it then have been liable to suit ?  The
principle decided in the case in 13 Gratt. would hold it so lia-
ble.  Then why not liable, if the State owned *all* the stock?
It seems to me the test is, was there a corporation created
charged with a duty and with rights and franchises incident
to corporations, among which is the right to sue, without
which the corporation would be without vitality, and the cor-
responding liability to be sued, without which it would be a
legalized despot trespassing upon the rights of the citizens,
who would be powerless to protect themselves.  The State
creates no such irresponsible entity.  The Legislature never
intended, that such corporations should be without legal lia-
bility, notwithstanding the State owns its property.  Would
any one doubt for a moment, that if the pilot of a steamer on
the Kanawha river should negligently or purposely run into
one of the dredge-boats under the control of the Kanawha

Board and destroy it, the Kanawha Board could bring suit against the owner of the steamer and compel him to respond in damages? If this be so, and the pilot of the dredge-boat should carelessly or purposely run into the steamer and sink and destroy it, would not an action lie against the Kanawha Board for such damage so inflicted? If not, it is because it was the State of West Virginia, that ran into and sank the steamer and the State cannot be sued. But it was not the State, that did it; it was a creature with corporate powers, capacities, and liabilities, that did it. The State as such does not enter into business of any such character. Her business is political, and when she wants improvements carried on, she creates corporations with the ordinary incidents thereto, to do that business. It would be against all our ideas of State government, if a corporation created by the State to carry on a work of improvement should not be liable like any other corporation for the damage it inflicted, notwithstanding the State might own the property of the corporation. Sovereignty does not reside in such a corporation. The State cannot delegate her sovereignty. There is no creature of the State above the law and irresponsible. If this were so, the corporation might deny to certain individuals all benefits to be conferred by the corporation, and yet it being·sovereign or representing sovereignty it could not be sued.

These principles are in perfect accord, as we believe, with the case of *Dunnington* v. *Northwestern Turnpike Co.*, *supra.* As we understand the ground, upon which the decree in *Sayre* v. *Northwestern Turnpike Co.*, 10 Leigh, *supra,* was placed, that case was virtually overruled by the case in 6 Gratt. In the last named case it was held, that the company was liable *ex contractu?* If liable to be sued in such an action, then by the same reasoning it is liable to be sued *ex delicto.* If it cannot be sued, because it represents the State, then it could be sued in no action, whether the action was in one form or the other. But the James River and Kanawha Company was held liable in an action *ex delicto,* and the right and franchises of that company being in the Kanawha Board, and it being held, that such corporations are not exempt from suit, we conclude, that it was liable to be sued, as was done in this case. If liable to suit, if the judgment is against it, and it asks,

that the judgment be reviewed, it must like any other corporation comply with the law by executing a bond. In this case when a *supersedeas* was allowed to the judgment a supersedeas-bond should have been required. There is no exemption for such a corporation in the statute. In all civil cases bond is required, unless the appeal or *supersedeas* be "necessary to protect the estate of a decedent."

Therefore the motion to dismiss this writ of error and *supersedeas*, unless bond as required by law is given, must prevail. And unless within ninety days from this time a proper supersedeas-bond is by the defendant below, the plaintiff in error here, or by some other person executed before the clerk of the circuit court of Kanawha county with good personal security in the penalty of $3,000.00, conditioned according to law, the said writ of error and *supersedeas* will be dismissed.

JUDGE GREEN CONCURRED.

Judge Haymond concurred in the opinion so far as it holds the "Kanawha Board" liable to be sued in the action, but is not prepared to say, that said Kanawha Board should be required to give bond before a judgment against it can be reviewed.

MOTION ALLOWED.